DANIEL J. O'HANLON, State Bar No. 122380
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
400 Capitol Mall, 27th Floor
Sacramento, CA 95814
Telephone: (916) 321-4500
Facsimile: (916) 321-4555

Attorneys for Plaintiffs
SAN LUIS & DELTA-MENDOTA WATER
AUTHORITY and WESTLANDS WATER DISTRICT

THOMAS W. BIRMINGHAM, State Bar No. 110898
H. CRAIG MANSON, State Bar No. 102298
3130 N. Fresno Street
Fresno, CA 93703
Telephone: (559) 224-1523
Facsimile: (559) 241-6277

Attorneys for Plaintiff
WESTLANDS WATER DISTRICT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY; WESTLANDS WATER DISTRICT, | CASE NO. |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR; KENNETH LEE SALAZAR, as Secretary of the United States Department of the Interior; UNITED STATES FISH AND WILDLIFE SERVICE; ROWAN W. GOULD, as Acting Director of the United States Fish and Wildlife Service, United States Department of the Interior; REN LOHOEFENER, as Director of the United States Fish and Wildlife Service, Pacific Southwest Region, United States Department of the Interior; UNITED STATES BUREAU OF RECLAMATION; MICHAEL L. CONNOR, as Commissioner of the United States Bureau of Reclamation, United States Department of the Interior; DONALD R. GLASER, as Director of the United States Bureau of Reclamation, Mid-Pacific Region, United States Department of the Interior, | |
| Defendants. | |

973434.1                                       -1-

Complaint for Declaratory and Injunctive Relief

Plaintiffs San Luis & Delta-Mendota Water Authority ("Authority") and Westlands Water District ("Westlands") (collectively referred to as "Plaintiffs") allege as follows:

## I. INTRODUCTION

1. This Complaint challenges the federal government's failure to comply with the mandatory, nondiscretionary duty set forth under Section 6(g) of the Coordinated Operating Agreement ("COA") between the United States and the State of California "to export and store as much water as possible" during periods of excess water conditions in the Sacramento-San Joaquin Delta ("Delta"). This duty is incorporated into section 3411(b) of the Central Valley Project Improvement Act ("CVPIA"), which requires that the Secretary of the Interior "shall fully comply with the United States' obligations" under the COA in implementing the CVPIA.

2. The Delta is currently in a period of excess water conditions, and such conditions are expected to last through at least the remainder of June, 2011. Contrary to the mandatory, nondiscretionary duty under Section 6(g) of the COA and CVPIA section 3411(b), the Defendants have ordered reduced export pumping from the C.W. "Bill" Jones Pumping Plant in the Delta for approximately fourteen days beginning on or around June 8, 2011. Such reductions are not mandated by the Endangered Species Act or any other provision of law. The Defendants claim the discretion to do so pursuant to Section 3406(b)(2) of the CVPIA ("(b)(2)"), which provides that the Defendants shall annually dedicate and manage 800,000 acre-feet of CVP Yield for the primary purpose of implementing the fish, wildlife, and habitat restoration purposes and measures authorized by CVPIA; to assist the State of California in its efforts to protect the waters of the San Francisco Bay/Sacramento-San Joaquin Delta Estuary; and to help to meet such obligations as may be legally imposed upon the Central Valley Project under State or federal law following the date of enactment of the CVPIA, including but not limited to additional obligations under the Federal Endangered Species Act. The statutory authority provided by section 3406(b)(2) is limited, however, by section 3411(b).

3. Section 3411(b) of the CVPIA provides, *inter alia*, that in implementing the provisions of CVPIA the Secretary shall fully comply with the United States' obligations as set

973434.1    -2-

Complaint for Declaratory and Injunctive Relief

KRONICK,
MOSKOVITZ,
TIEDEMANN & GIRARD
ATTORNEYS AT LAW
SACRAMENTO

forth in the Agreement Between the United States of America and the Department of Water Resources of the State of California for Coordinated Operation of the Central Valley Project and the State Water Project dated May 20, 1985. In turn, Article 6(g) of the Agreement Between the United States of America and the Department of Water Resources of the State of California for Coordinated Operation of the Central Valley Project and the State Water Project provides that during excess water conditions Reclamation has the responsibility to export and store as much water as possible within its physical and contractual limits. The pumping reduction ordered by Defendants will result in exports that are less than Reclamation's physical and contractual limits, and therefore, the pumping reductions are a violation of the Defendants' mandatory duty under section 3411(b) to implement Article 6(g) of the COA.

4. The pumping reductions will reduce the amount of water that can be exported from the Delta, resulting in loss of water available for deliveries to Central Valley Project ("CVP") contractors located south of the Delta. The CVP has lost significant flexibility in export pumping actions since adoption of the CVPIA, and listings of species under the Federal Endangered Species Act, and CVP contractors have lost valuable water supplies and certainty of water supplies. Foregone opportunities to pump water increase the risk of further reductions and loss of water supply to CVP contractors south of the Delta.

5. While Defendants Bureau of Reclamation and Fish and Wildlife Service have not released an up-to-date accounting of releases under the (b)(2) account, Plaintiffs are informed, and on that basis believe, that the Defendants likely claim substantial amounts of water remaining under the (b)(2) account for the current accounting year. If excess water conditions in the Delta continue through the end of June, it is reasonable to assume that the Defendants will continue to seek export reductions in favor of the (b)(2) account. This threatens the Plaintiffs with further irreparable harm.

6. Plaintiffs bring this action to prevent irreparable injury from unlawful disregard of the federal government's mandatory, nondiscretionary duty to maximize export and storage from the Delta during periods of excess water conditions in the Delta. The Defendants' reduction of pumping in favor of the (b)(2) account during periods of excess water conditions should be

973434.1                             -3-

KRONICK,
MOSKOVITZ,
TIEDEMANN & GIRARD
ATTORNEYS AT LAW
SACRAMENTO

Complaint for Declaratory and Injunctive Relief

declared unlawful, be immediately restrained and be preliminarily and permanently enjoined. Plaintiffs further seek declaratory relief that Defendants are bound by the mandatory duty in CVPIA section 3411(b) to Article 6(g) of the COA to maximize export and storage from the Delta during periods of excess water conditions in the Delta.

## II.   JURISDICTION, SOVEREIGN IMMUNITY AND VENUE

7. This action states claims against officers of the United States and agencies of the Untied States arising under contracts executed pursuant to the 1902 Reclamation Act, 32 Stat. 388, and acts amendatory thereof and supplementary thereto, including the Central Valley Project Improvement Act ("CVPIA"), Title XXXIV of the omnibus bill passed on or about October 30, 1992, H.R. 429, Pub. Law No. 102-575, 106 Stat. 4600, and under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500, et seq.  This Court has jurisdiction of this action pursuant to 5 U.S.C. § 702, 28 U.S.C. § 1331 and 28 U.S.C. § 1346(a)(2).  This Court is authorized to issue declaratory relief pursuant to 28 U.S.C. § 2201, and is authorized to issue injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

8. The United States has waived its sovereign immunity, and that of federal agencies and employees, pursuant to 5 U.S.C. §§ 701 et seq. including sections 702 and 704.

9. Claims alleged in this action involve rights to water for land situated within Stanislaus, Merced, Fresno and Kings County, California, which land is within the boundaries of the United States District Court for the Eastern District of California.  Further, the acts or omissions giving rise to the claims occurred within the boundaries of the United States District Court, Eastern District of California and substantially impact land situated within Stanislaus, Merced, Fresno and Kings County.  Therefore, venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(e)(2), and Rule 3-120(b) of the Local Rules of the United States District Court, Eastern District of California.

## III.   PARTIES

10. Plaintiff San Luis & Delta-Mendota Water Authority ("Authority") is, and at all

times mentioned herein was, a joint powers authority formed pursuant to California Government Code § 6500, *et seq*. The Authority consists of 32 member public agencies that contract with the United States Bureau of Reclamation for water supply from the CVP. Water delivered to the Authority's members by the CVP is used within areas of San Joaquin, Stanislaus, Merced, Fresno, Kings, San Benito, and Santa Clara Counties, California. Some of the CVP water delivered to its members is supplied via California's State Water Project ("SWP") pumps and facilities located within the Sacramento and San Joaquin Rivers Delta ("Delta"). Among the purposes for which the Authority was formed is to preserve and protect the quantity and quality of surface and groundwater supplies available for use within the boundaries of its member agencies. The Authority is authorized to commence and maintain suits on behalf of its member agencies. Pursuant to an agreement between the Authority and the United States, which became effective March 1, 1998, responsibility for the operation and maintenance of some facilities of the Delta Division of the CVP was transferred to the Authority. Based upon this agreement, the Authority operates the Jones Pumping Plant, the Delta-Mendota Canal, and other related facilities of the CVP.

11. Plaintiff Westlands Water District ("Westlands") is a California water district formed pursuant to California Water Code section 34000, et seq. Westlands provides water to an area of approximately 600,000 acres in Fresno and Kings Counties on the western side of the San Joaquin Valley. Westlands is authorized to commence and maintain on behalf of landowners within its boundaries any action involving or affecting the ownership or use of water. Westlands holds vested contractual rights to receive water from the United States Bureau of Reclamation for distribution and use within Fresno and Kings Counties. Westlands also holds vested contractual rights to receive additional water under the Stipulated Judgment entered on December 30, 1986, in the consolidated cases of *Barcellos and Wolfsen, Inc., et al. v. Westlands Water District* and *Westlands Water District v. United States of America*, Nos. CV 79-106 OWW and CV F-89-245 OWW (E.D. Cal.) (collectively "*Barcellos*"). Most of Westlands' CVP water is supplied via CVP pumps and facilities located within the Delta, but some of Westlands' CVP water can also be supplied via SWP pumps and facilities located within the Delta. Westlands is a member of the

1  Authority.

2  12. Defendant Department of the Interior ("Interior") is a department within the
3  Executive Branch of the United States government.

4  13. Defendant Kenneth Lee Salazar is the Secretary of the Interior ("Interior
5  Secretary" or "Secretary"), and is named herein in his official capacity.

6  14. Defendant United States Fish & Wildlife Service ("FWS") is an agency of the
7  United States, within Interior.

8  15. Defendant Rowan Gould is the Acting Director of the FWS, and is named herein
9  in his official capacity.

10 16. Defendant Ren Lohoefener is the Director of the FWS's Pacific Southwest Region,
11 and is named herein in his official capacity.

12 17. Defendant United States Bureau of Reclamation ("Reclamation") is an agency of
13 the United States, within Interior, and is charged with various duties and responsibilities including
14 operating the CVP and entering into and administering contracts for CVP water on behalf of the
15 United States of America.

16 18. Defendant Michael L. Connor is the Commissioner of Reclamation
17 ("Commissioner"), and is named herein in his official capacity.

18 19. Defendant Donald Glaser is the Director of Reclamation's Mid-Pacific Region,
19 and is named herein in his official capacity. The Regional Director is responsible for the
20 administration and operation of the CVP.

21 20. Defendants Interior, Salazar, FWS, Gould, Lohoefener, Reclamation, Connor, and
22 Glaser are collectively referred to herein as "Defendants."  Defendants Interior, Salazar, FWS,
23 Gould and Lohoefener, are collectively referred to herein as "FWS Defendants."  Defendants
24 Reclamation, Connor, and Glaser are collectively referred to herein as the "Reclamation
25 Defendants."

## IV. GENERAL ALLEGATIONS

**OPERATIONS OF THE CENTRAL VALLEY PROJECT**

21. The CVP is a project operated by Reclamation, and is the largest water storage and delivery system in California, covering 29 of the state's 58 counties. The CVP consists of 20 reservoirs capable of storing 9 million acre-feet of water, 11 power plants, 500 miles of major canals, aqueducts and tunnels. In order to facilitate CVP operations, Reclamation holds title to water export facilities located in the Delta including the C.W. "Bill" Jones Pumping Plant (formerly known as the Tracy Pumping Plant). The Jones Pumping Plant pumps water from the Delta, for delivery to areas of California south and west of the Delta.

22. For many years, the CVP and the SWP have been operated pursuant to a series of cooperative operating agreements between Reclamation and the California Department of Water Resources ("DWR"). The SWP is the largest state-operated water supply project in the United States and includes 32 storage facilities, reservoirs and lakes; 17 pumping plants; 3 pumping-generating plants; 5 hydroelectric power plants; and about 660 miles of pipelines and open canals that collectively stretch from Oroville Reservoir, located on the Feather River in the north, to Perris Reservoir, located in Riverside County in the south. Through the SWP, water is pumped from the Delta at the Banks Pumping Facility, located near Tracy, California, for transmittal to end users located within several regions of California via the California Aqueduct. The SWP supplies urban and agricultural water to about two-thirds of the residents of California (approximately 25 million Californians) and about 750,000 acres of the State's farmland located in the San Francisco Bay Area, the San Joaquin Valley, the Central Coast, and Southern California.

23. The Delta is used to convey CVP and SWP water from the wetter northern regions of California to farms, cities and industries in the drier central and southern regions. The flows of the Sacramento River, San Joaquin River and countless smaller streams draining the west side of the Sierra Nevada mountain range and the east side of the Coast Range all meet in the Delta. In wetter months, the CVP and SWP divert surplus flows in the Delta using pumps located near Tracy, California, both for direct use and for storage in facilities south of the Delta, including the San Luis Reservoir. They also store flows in reservoirs on streams upstream from the Delta, such as Shasta Reservoir, a CVP facility, and Oroville Reservoir, a SWP facility, for later release at

973434.1 -7-

KRONICK,
MOSKOVITZ,
TIEDEMANN & GIRARD
ATTORNEYS AT LAW
SACRAMENTO

Complaint for Declaratory and Injunctive Relief

1  drier times of the year. Those later releases from reservoir storage serve various purposes,
2  including supporting deliveries to CVP and SWP contractors. The CVP and SWP contractors in
3  turn distribute the water to water users in their service areas.

4      24.     The CVP provides water to irrigate approximately 3.25 million acres of farmland
5  and supplies water to more than 2 million people through more than 250 long-term water
6  contractors in the CVP service area. Most of the CVP service area is within the Central Valley,
7  but CVP water is also supplied to users within San Benito and Santa Clara Counties.
8  Approximately 90 percent of CVP water delivered to contractors located south of the Delta is
9  used for agricultural purposes.

10      25.     The CVP is a project authorized by various acts of Congress, including among
11  others, the Rivers and Harbors Act of August 30, 1935 (49 Stat. 1028, 1038). The CVP was made
12  subject to federal reclamation law by the Rivers and Harbors Act of August 26, 1937 (50 Stat.
13  844, 850), and operates under water right permits and licenses granted by the California State
14  Water Resources Control Board and the Board's predecessors. Pursuant to federal reclamation
15  law, and as provided in the water rights permits issued for the CVP, the right to the use of water
16  appropriated by Reclamation pursuant to said permits and licenses is appurtenant to the lands
17  irrigated thereby.

18      26.     Under the provisions of the federal San Luis Act, Central Valley Project, (Pub.
19  Law 86-488, 74 Stat. 156) (hereinafter "San Luis Act"), construction of the San Luis Unit of the
20  CVP was authorized for the principal purpose of furnishing water for the irrigation of the federal
21  San Luis Unit service area, including the area served by Westlands.

22      27.     Pursuant to federal reclamation law, Reclamation entered into long-term water
23  supply contracts to supply water to numerous water districts, and other public entities, including
24  Westlands and other Authority member agencies, for distribution to and use by farmers,
25  businesses, municipalities and other persons. However, in the period since the early 1990's,
26  average annual deliveries have been well below contract entitlement amounts. This has occurred
27  primarily as a result of ever-increasing regulation and restrictions of CVP pumping from the
28  Delta. Failure to comply with the duty to maximize export and storage pumping during periods

973434.1     -8-

KRONICK,
MOSKOVITZ,
TIEDEMANN & GIRARD
ATTORNEYS AT LAW
SACRAMENTO

Complaint for Declaratory and Injunctive Relief

of excess water conditions in the Delta will likely result in further reductions in the quantity of water available for delivery to Plaintiffs in the 2011 water year and beyond. Implementation and enforcement of the decision to reduce export pumping at the Jones Pumping Plant would likely result in further reductions in the quantity of water available for delivery to Plaintiffs in the 2011 water year and beyond.

### COA REQUIREMENTS

28. The operations of the CVP and SWP are coordinated pursuant to the Agreement between the United States of America and the Department of Water Resources of the State of California for Coordinated Operation of the Central Valley Project and the State Water Project ("Coordinated Operating Agreement" or "COA"), dated May 20, 1985. A copy of the COA is attached as Exhibit 1 to the Request for Judicial Notice filed concurrently herewith.

29. The COA was approved by Congress in Section 103 of Public Law 99-546, which amended Section 2 of the Act of August 26, 1937 (50 Stat. 850) to authorize and direct the Secretary of the Interior to 'execute and implement' the COA. Public Law 99-546 further mandated that the COA may only be terminated after 'the Secretary of the Interior or the State of California submits a report to Congress and sixty calendar days have elapsed … .' Pub. Law 99-546 section 103.

30. Article 6(g) of the COA provides: "During excess water conditions each party has the responsibility to export and store as much water as possible within its physical and contractual limits." This is a non-discretionary duty under the COA that the United States is obligated by statute to implement and be in full compliance during periods when the excess water condition is met.

31. CVPIA Section 3406(a) amends Section 2 of the Act of August 26, 1937 (chapter 832; 50 Stat. 850), as amended, to add "mitigation, protection, and restoration of fish and wildlife" as authorized purposes of the CVP on par with domestic and agricultural project purposes, and to add "fish and wildlife enhancement" as a project purpose as the next priority, on par with power uses.

32. Section 3406(b)(2) of the CVPIA directs that the Secretary of the Interior shall

annually dedicate and manage 800,000 acre-feet of CVP Yield for the for the primary purpose of implementing the fish, wildlife, and habitat restoration purposes and measures authorized by CVPIA; to assist the State of California in its efforts to protect the waters of the San Francisco Bay/Sacramento-San Joaquin Delta Estuary; and to help to meet such obligations as may be legally imposed upon the Central Valley Project under State or Federal law following the date of enactment of this title, including but not limited to additional obligations under the Federal Endangered Species Act.

33. Section 3411(b) of the CVPIA states in relevant part that "The Secretary, in the implementation of the provisions of this title, shall fully comply with the United States' obligations as set forth in the [COA], and the provisions of Pub. L. 99-546[.]"

**EXPORT PUMPING DECISION**

34. Excess water conditions currently exist in the Delta, and are expected to exist through at least the end of June, 2011.

35. On or around June 6, 2011, Plaintiff San Luis and Delta-Mendota Water Authority received a change order from Defendant Reclamation to reduce pumping at the Jones Pumping Plant to three pump units, for fourteen days commencing at 6:59 am on Wednesday, June 8. The volume of pumping is controlled by the number of pumping units in operation. The Jones Pumping Plant contains a total of six pump units total. The ordered reduction to three pump units reduced the volume of pumping to approximately 3,000 cubic feet per second ("cfs"). Because of the excess water conditions, the Jones Pumping Plant could instead be pumping at a rate of approximately 4,200 cfs while still meeting the requirements of the water rights permits applicable to the CVP and the applicable biological opinions under the federal Endangered Species Act.

36. When asked for an explanation, Defendant Reclamation stated that Defendant FWS had requested export reductions from the Jones Pumping Plant under the CVPIA section 3406 (b)(2) account, in order to benefit the migration of fall-run Chinook salmon.

37. The Jones Pumping Plant is not currently under any physical, contractual, or legal obligation to reduce exports below 4,200 cfs. In the time of excess water conditions, Reclamation

973434.1                                -10-

KRONICK,
MOSKOVITZ,
TIEDEMANN & GIRARD
ATTORNEYS AT LAW
SACRAMENTO

Complaint for Declaratory and Injunctive Relief

could, but is not, pumping at a rate of 4,200 cfs instead of the current rate of 3,000 cfs.

38. The current pumping reduction based on the (b)(2) account violates the mandatory, nondiscretionary duty set forth in Section 3411(b) of the CVPIA to implement Section 6(g) of the COA.

## IMPACTS OF DEFENDANTS' ACTIONS

39. Water supplies across California are already scarce from recent years of dry weather, restrictions imposed by the State Water Resources Control Board in Decision 1641, and restrictions on SWP and CVP operations imposed by the Reasonable and Prudent Alternatives of the recent 2008 Delta Smelt Biological Opinion and 2009 Salmonid Biological Opinion.

40. Despite a wet year, agricultural water service contractors are currently at an 80% contract allocation. Plaintiffs' interests have been, are, and will continue to be directly and adversely affected by the Defendants' failures and unlawful actions with respect to the CVP. The Defendants are acting contrary to law as set forth in this Complaint and have been, are, and will continue to subject Plaintiffs and their constituents to significant and detrimental water quality and water supply impacts, and related adverse economic and environmental impacts.

41. Plaintiffs have exhausted any and all administrative remedies required by law and have performed any and all conditions precedent to the filing of this action.

42. Plaintiffs have no plain, speedy or adequate remedy at law. In the absence of such remedies, the Defendants' continued violation of section 3411(b) of the CVPIA, as it incorporates requirements of the COA, will remain in effect, contrary to federal law, and the Plaintiffs will be irreparably injured. The current pumping reduction will likely prevent the CVP from pumping otherwise available water at the Delta pumping plants, and such water will be irrevocably and irretrievably lost and unavailable to Plaintiffs for allocation in the 2011-2012 water year and water years thereafter. The Defendants claim the authority to impose additional restrictions under CVPIA section 3406(b)(2) during excess water conditions, and threaten Plaintiffs with harm from such future restrictions as well. Plaintiffs seek relief from the current restrictions and to prevent further restrictions in the future.

43. The APA provides: "agency action made reviewable by statute and final agency

action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

44. The Reclamation Defendants operate the CVP, and provide water to the Authority's member agencies pursuant to contract. The 2011 Pumping Decision has and unless FWS Defendants are restrained will continue to unlawfully constrain CVP operations during excess water conditions under the supposed authority of section 3406(b)(2) of the CVPIA. The Reclamation Defendants have implemented the FWS Defendants' decision to limit pumping, and are named as defendants to this action so that the Court may provide an adequate remedy to the Plaintiffs regarding current and future CVP operations, as provided for by the APA.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(Agency Action Unlawfully Withheld in Violation of APA § 706(1))**

45. Plaintiffs reallege and incorporate herein, as set forth in full, each and every allegation contained in paragraphs 1 through 44, inclusive, of this Complaint and further allege as follows.

46. The Defendants' decision to reduce pumping for export and storage from the Jones Pumping Plant in favor of the (b)(2) account during a period of excess water conditions in the Delta violates the mandatory, nondiscretionary duty set forth in Section 3411(b) of the CVPIA to maximize pumping during such periods as required under Section 6(g) of the COA.

47. Instead of maximizing exports in this period of excess water conditions, Defendants have acted to reduce export pumping below physical and contractual limits. Thus, the Defendants' action is agency action unlawfully withheld within the meaning of 5 U.S.C. section 706(1).

48. The Plaintiffs have no plain, speedy and adequate remedy in the course of law, and absent immediate judicial intervention, the Authority and its members will suffer irreparable injury.

49. An actual controversy has arisen between Plaintiffs and Defendants regarding Defendant's failure to administer and operate the CVP in accordance with federal law. A judicial

declaration is necessary and appropriate at this time under these circumstances in order that Plaintiffs may ascertain its rights and Defendants' obligations pursuant to federal law, as alleged above. Unless such a declaration is issued, Plaintiffs will suffer a loss and/or impairment of their interests, mission, rights and property in violation of law.

WHEREFORE, Plaintiffs are entitled to relief as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

**(In the alternative to the First Claim;**

**Unlawful Agency Action in Violation of APA § 706(2))**

50. Plaintiffs reallege and incorporate herein, as set forth in full, each and every allegation contained in paragraphs 1 through 44, inclusive, of this Complaint and further allege as follows.

51. The Defendants' decision to impose pumping restrictions on the CVP for the benefit of the fall-run Chinook salmon is a final agency action within the meaning of Section 706(2) of the APA, which provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

52. In imposing pumping restrictions not otherwise required, the Defendants acted in a manner that was contrary to CVPIA section 3411(b). The actions and omissions of the Defendants with respect to the pumping reduction alleged in this Complaint were arbitrary, capricious, an abuse of discretion, not in accordance with law, and were in excess of the Defendants' jurisdiction and authority.

53. The pumping reduction decision, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, within the meaning of 5 U.S.C. section 706(2)(A), and is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, within the meaning of 5 U.S.C. section 706(2)(C).

54. The Plaintiffs have no plain, speedy and adequate remedy in the course of law, and

absent immediate judicial intervention, the Authority and its members will suffer irreparable injury.

55. An actual controversy has arisen between Plaintiffs and Defendants regarding Defendant's failure to administer and operate the CVP in accordance with federal law. A judicial declaration is necessary and appropriate at this time under these circumstances in order that Plaintiffs may ascertain its rights and Defendants' obligations pursuant to federal law, as alleged above. Unless such a declaration is issued, Plaintiffs will suffer a loss and/or impairment of their interests, mission, rights and property in violation of law.

WHEREFORE, Plaintiffs are entitled to relief as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

1. For temporary, preliminary and permanent injunctive relief pursuant to Federal Rule of Civil Procedure Rule 65 prohibiting Defendants from continuing to violate CVPIA section 3411(b), as alleged above;

2. For a declaratory judgment pursuant to 28 U.S.C. § 2201 providing that defendants must operate the CVP and implement the Water Service Contracts in accordance with the CVPIA and the COA, as alleged above;

3. For an award of reasonable attorneys fees and costs of suit fees and costs pursuant to 5 U.S.C § 504(a)(1) and/or § 504(b)(1)(c), and/or pursuant to 28 U.S.C. § 2412(b) and (d); and

4. For such other and further relief as the Court deems just and proper.

Dated: June 9, 2011

KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Law Corporation


By: /s/ *Daniel J. O'Hanlon*
Daniel J. O'Hanlon
Attorneys for Plaintiffs
SAN LUIS & DELTA-MENDOTA WATER AUTHORITY and WESTLANDS WATER DISTRICT