UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>Defendants. | 1:11-cv-00952 LJO GSA<br><br>ORDER REQUESTING SUPPLEMENTAL DECLARATIONS |

This case presents a conflict between two provisions of the 1992 Central Valley Improvement Act ("CVPIA"), Pub. L. No. 102-575, 106 Stat. 4700 (1992).  CVPIA § 3406(b)(2) requires the Secretary of the Interior to dedicate 800,000 acre feet ("AF") of water to serve certain fish and wildlife restoration purposes.  CVPIA § 3411(b) requires the Secretary to comply with a 1985 Agreement Between the United States of America and the Department of Water Resources of the State of California for Coordinated Operation of the Central Valley Project and the State Water Project (otherwise referenced as "Coordinated Operations Agreement" or "COA"), which in turn requires the Bureau of Reclamation to export as much water as possible when the Delta is in "excess water"[1] conditions.

Plaintiffs filed this lawsuit on June 6, 2011, during a period when the Delta was in "excess water conditions," complaining that, contrary to the mandate in CVPIA § 3411(b) to export as much water as possible, Defendants ordered reduced export pumping for two week period starting on June 8, 2011,

---
[1] "Excess water conditions," are defined in the COA as "periods when it is agreed that releases from upstream reservoirs plus unregulated flow exceed Sacramento Valley inbasin uses plus exports."  COA ¶ 3(c), Doc. 14-1 at p. 7 of 46.

1

pursuant to the Secretary's authority under § 3406(b)(2). Plaintiffs' motion for preliminary injunctive relief was denied, *see* Doc. 38 & 49, and the pumping reduction expired of its own accord.

Defendants now move to dismiss this case as moot. Doc. 56. Plaintiffs oppose the motion and attach the supporting declaration of James Snow. Docs. 57 & 57-1. Defendants replied. Doc. 58. The motion was originally set for hearing on February 24, 2012, but the hearing was vacated and the matter submitted for decision on the papers.

A pivotal issue in this case is whether Plaintiffs' claims satisfy the "capable of repetition but evading review" exception to the mootness doctrine. *See Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964-66 (9th Cir. 2007). For this exception to apply: "(1) the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

The only relevant evidence presented by either side is the Declaration of Plaintiffs' expert James Snow, who presents a Table depicting "Periods of Excess Water Conditions When There Were Pumping Reductions" from 1987-2011. Doc. 57-1 at ¶ 10. Snow concludes, and the Table supports, that excess water conditions have occurred every year since the COA was adopted. *Id*. at ¶ 9. Snow also concludes that "there have been 29 instances of pumping reductions since 1986," purportedly coinciding with periods of excess conditions, "where the physical limitations of the project do not account for the reduced pumping." *Id*. at ¶ 11.

Snow's Table lists variety of reasons for these pumping reductions:

- "E/I Ratio" – When pumping is reduced to meet a ratio of total Project exports divided by total Inflow to the Delta (the "E/I Ratio") mandated by State Water Resources Control Board Decision 1641 ("D-1641"). *See id*. at ¶ 12.

2

- "VAMP" – When pumping is reduced to meet flow requirements and export limitations contained in the voluntary Vernalis Adaptive Management ("VAMP") experiment. *See id*. at ¶ 13.

- "Fish" – This generic term appears in the underlying data and Snow's Table on many occasions but is not well defined. Snow states that "fish" reductions "were presumably made to address some fishery concern." *Id*. at ¶ 14. However, "the precise authority under which [the agencies within the Department of the Interior] are acting" is not always clear. *Id*. "[C]uts may have been made to meet obligations under the Endangered Species Act ("ESA")," or pursuant to CVPIA § 3406(b)(2). *Id.* "Fish" was given as a basis for the reduction on virtually every occasion since 1992. *See id*. at ¶ 10, Table 1.

- "(b)(2)" – The Table also gives "(b)(2)" as one of the "reasons" for every noted "period of excess conditions with reduced pumping." *Id*. However Snow fails to define the basis for this designation. Is this an indication of instances in which the pumping reduction was accounted for as a (b)(2) use? The declaration does not explain.

- "OMR" – Likewise, the Table gives "OMR" as a basis for some of the reductions, but Snow does not explain the use of this designation. Does this refer to OMR restrictions imposed under the various ESA biological opinions? Under other legal regimes?

The Court is unable to determine from the Snow Declaration whether any of the noted pumping reductions were "pure" exercises of the Secretary's discretion under CVPIA § 3406(b)(2), or whether each was mandated by some other source of law (e.g., the ESA or D-1641). Plaintiffs do not challenge the Secretary's authority to implement reductions during excess conditions if those reductions are mandated by some other (i.e., non-CVPIA) source of law or were imposed as part of the voluntary

VAMP experiment. Plaintiffs only dispute that the Secretary has the discretion to order such reductions when other laws are not controlling. The Complaint alleges that the Secretary ordered a pumping reduction in June 2011 that was unsupported by any source of law other than CVPIA § 3406(b)(2). Whether similar events occurred in the past is potentially dispositive of the application of the "capable of repetition but evading review" exception. *Demery v. Arpaio*, 378 F.3d 1020, 1027 (9th Cir. 2004) (repeated past conduct taken as evidence of likely repetition); *Natural Resources Defense Council, Inc. v. Evans*, 316 F.3d 904, 910 (9th Cir. 2003) (same, noting that agency repeatedly applied the same, challenged rationale, "year after year"); *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 -1330 (9th Cir. 1992) (one prior instance of agency relying allegedly insufficient biological opinion sufficient to find reasonable expectation of recurrence).

Accordingly, Plaintiffs are requested to file a single supplemental declaration clarifying the notations in Snow's existing Table 1 in order to address the narrow issue of whether Federal Defendants have ever before, apart from the June 2011 instance that is the subject of the Complaint, ordered reduced pumping during excess conditions based purely on the Secretary's authority under CVPIA § 3406(b)(2). Plaintiffs' supplemental declaration shall be filed on or before March 30, 2012. Federal Defendants may file a responsive declaration on or before April 9, 2012. No further legal briefing is necessary and none shall be permitted. Upon expiration of the April 9, 2012 deadline, the matter shall again be deemed submitted on the papers.

**SO ORDERD**
**Dated:  March 5, 2012**

                                                **/s/ Lawrence J. O'Neill**
                                                **United States District Judge**